UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



LORAINE N. HAYDEN,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY[1],

                Defendant.

**DECISION AND ORDER**

1:17-CV-00831 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Loraine N. Hayden ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 14), and Plaintiff's response (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is granted, the Commissioner's motion (Dkt. 14) is

---

[1] As of the date of this Decision and Order, Nancy A. Berryhill, the Defendant named by Plaintiff in this matter, is no longer the Acting Commissioner of Social Security. No successor has been named in her place. The Clerk of Court is therefore instructed to substitute the "Commissioner of Social Security" as the Defendant, in accordance with Federal Rule of Civil Procedure 25(d).

denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed her application for DIB on November 9, 2012. (Dkt. 9 at 114).[2] Plaintiff alleges disability beginning May 2, 2012, due to major depressive disorder, anxiety disorder with panic attacks, borderline personality disorder, PTSD, nicotine dependence, degenerative disc disease of the cervical, thoracic, and lumbar spine, radiculopathy, peripheral neuropathy, left ulnar neuropathy, polyneuropathy, fibromyalgia, Raynaud's disease, peripheral artery disease, irritable bowel syndrome, reflux disease, COPD, and obesity. (Dkt. 10-1 at 2; *see also* Dkt. 9 at 115). Plaintiff's application was initially denied on September 19, 2013. (Dkt. 9 at 139-166). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Wallace Tannenbaum on October 15, 2013. (*Id.* at 94-113). On November 20, 2013, the ALJ issued an unfavorable decision. (*Id.* at 126-138). On December 24, 2013, Plaintiff requested Appeals Council review. (*Id.* at 233-34).

Thereafter, on November 14, 2014, Plaintiff filed an application for SSI. (*Id.* at 343). On May 1, 2015, the Appeals Council granted Plaintiff's request for review and vacated ALJ Tannenbaum's decision. (*Id.* at 168-171). Plaintiff received a new hearing before ALJ William Weir in Buffalo, New York, on October 9, 2015. (*Id.* at 57-93). On

---

[2] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

May 10, 2016, the ALJ issued an unfavorable decision. (*Id.* at 27-49). Plaintiff again requested Appeals Council review; her request was denied on July 27, 2017, making ALJ Weir's decision the Commissioner's final determination. (*Id.* at 7-12). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.*

§§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2016. (Dkt. 9 at 32). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 2, 2012, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative disc disease, peripheral neuropathy, obesity, major depressive disorder, and borderline personality disorder. . . ." (*Id.* at 33). The ALJ further found that Plaintiff's medically determinable impairment of left ulnar neuropathy was non-severe. (*Id.*). With respect to Plaintiff's representations that she suffered from fibromyalgia, Raynaud's syndrome and generalized anxiety disorder, the ALJ concluded that these were not medically determinable impairments. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 33-34). The ALJ particularly considered the criteria of Listings 1.04A-C, 11.14, 12.04A-C, and 12.08, in reaching his conclusion. (*Id.* at 33-36).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:

> is limited to performing work with a specific vocational profile of two or lower, involving simple, repetitive one and two-step tasks; cannot be required to determine quality, quantity or method of work; must be able to alternate between sitting and standing at fifteen-minute intervals while remaining at her work station; cannot have contact with the public, and can have occasional contact with coworkers and supervisors; and can occasionally kneel and squat.

(*Id.* at 36). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 47).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of bench assembler, electrical accessories assembler, and inspector. (*Id.* at 48). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 48-49).

## II. Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse the Commissioner's decision, arguing that: (1) the ALJ erred in evaluating the opinion evidence of record, specifically with regard to

Plaintiff's treating psychiatrist, Dr. Shamsi; (2) remand is necessary to further assess whether Plaintiff's psychological impairments met or medically equaled one of the listed impairments, including the medical expert's review of additional evidence in the record; and (3) the ALJ committed reversible error by failing in his RFC determination to make specific findings regarding how stress limits Plaintiff's ability to work. For the reasons set forth below, the Court finds that the ALJ erred in evaluating the opinion evidence of Dr. Shamsi, and that this error necessitates remand for further administrative proceedings.

### A. Assessment of Dr. Shamsi's Opinion

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" *Scitney v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33.

In this case, Dr. Shamsi, a psychiatrist, began treating Plaintiff in June 2014. (Dkt. 9 at 788-89). On September 23, 2015, Dr. Shamsi, along with a licensed clinical social worker, completed a Mental Residual Functional Capacity Questionnaire, relating to Plaintiff's ability to function in a work setting. (*Id.* at 1076). Dr. Shamsi assessed Plaintiff's GAF as 55 and noted that her medications caused joint pain. (*Id.*). Based on an examination of Plaintiff's mental/emotional capabilities, Dr. Shamsi found that Plaintiff

was "seriously limited, but not precluded" (meaning "ability to function in this area is seriously limited and less than satisfactory, but not precluded. This is a substantial loss of ability to perform the work-related activity"), in several areas, including: maintaining attention for a two hour segment; working in connection with or proximity to others without being unduly distracted; completing a workday or workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number or length of rest periods; dealing with normal work stress; and carrying out detailed instructions. (*Id.* at 1078-79). Dr. Shamsi further found Plaintiff incapable of accepting instructions and responding appropriately to criticism from supervisors or dealing with the stress of semiskilled and skilled work. (*Id.*). Dr. Shamsi opined that Plaintiff had a "noted increase" in pain with increased stress and, due to her impairments, Plaintiff would miss about two days of work per month. (*Id.* at 1079-80). Finally, Dr. Shamsi opined that Plaintiff is not a malingerer; that Plaintiff's impairments are consistent with her symptoms and functional limitations; and that Plaintiff has difficulty coping with stressful situations and criticism. (*Id.* at 1080).

In his decision, the ALJ acknowledged that Dr. Shamsi's opinion is "largely consistent with the residual functional capacity determined above," but nevertheless gave the opinion "little weight because it is at odds with benign findings on mental status examination reported by Dr. Shamsi just thirteen days before the opinion was rendered, and, with regard to the claimant's ability to interact with supervisors, is internally inconsistent." (*Id.* at 45). The ALJ did not provide any additional explanation or analysis as to why he declined to give Dr. Shamsi's opinion any further weight, including any

indication that he considered the length of Plaintiff's treatment with Dr. Shamsi (the record contains approximately 70 pages of medical records submitted by Dr. Shamsi), the evidence in support of the opinion, and/or whether the opinion was from a specialist. Rather, the decision contains only a cursory explanation that this single mental status report, in the ALJ's opinion, conflicted with a prior evaluation by Dr. Shamsi, and was internally inconsistent with regard to one of the criteria.

In this regard, the ALJ failed to address the multiple opinions, including opinions by Dr. Shamsi, that Plaintiff's symptoms are exacerbated when presented with stressful situations. Dr. Shamsi's reports on Plaintiff's condition include consistent references to Plaintiff's inability to handle stress and/or a significant increase in Plaintiff's symptoms when experiencing stressful situations. *See id.* at 788 (on June 9, 2014, noting depressed mood and poor frustration tolerance); *id.* at 794-95 (on October 29, 2014, displaying abnormalities including anxious mood, preoccupation with external stressors, and poor frustration tolerance); *id.* at 798 (on December 24, 2014, Plaintiff presented with "thought content . . . characterized by preoccupation and external stressors."); *id.* at 1079 (Plaintiff has a "noted increase" in pain with increased stress). In sum, the Court finds that the three-line explanation contained in the ALJ's decision as to why Dr. Shamsi's opinion is afforded little weight does not fulfill the "good reasons" requirement, as it is not sufficiently specific, and does not "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33.

Furthermore, the ALJ's opinion, which references categories of Dr. Shamsi's report for which Plaintiff received favorable ratings, is completely devoid of any discussion of

activities for which Plaintiff is "seriously limited," discussed above, including her ability to maintain attention for a two hour segment; work in connection with or proximity to others without being unduly distracted; complete a workday or workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number or length of rest periods; deal with normal work stress; and carry out detailed instructions. An adequate explanation as to why the ALJ afforded little weight to Dr. Shamsi's opinion should have, at the very least, included a discussion of the several significant activities falling within that category, and why they do not support a finding of disability in Plaintiff's case.

While Defendant identifies several perceived inconsistencies in Dr. Shamsi's opinion (*see* Dkt. 14-1 at 24-25), these articulations are absent from the ALJ's opinion. Defendant's after-the-fact explanation as to why the ALJ rejected Dr. Shamsi's opinion cannot serve as a substitute for the ALJ's findings. *See Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014) (rejecting Commissioner's attempt to justify the ALJ's failure to incorporate a treating physician's opinion into his RFC); *see also Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action); *Michels v. Berryhill*, No. 1:15-CV-00688 (MAT), 2018 U.S. Dist. LEXIS 32627, at *7 (W.D.N.Y. Feb. 28, 2018) ( "[i]t is not the role of this Court to weigh the evidence of record and determine in the first instance whether or not Plaintiff's

learning disorder constituted a severe impairment—that task falls to the ALJ, who failed to fulfill his obligation in this case.").

The ALJ's failure to properly evaluate Dr. Shamsi's report was not harmless error, particularly regarding the opinion that Plaintiff would miss two days per month of work. At the October 2015 hearing, the vocational expert testified that Plaintiff would "be restricted to unskilled work that's more concrete and routine in nature and that allows her to do that work either in a sitting or standing position." (Dkt. 9 at 90). The vocational expert also testified that unskilled work "does have productivity expectations," and "unskilled workers need to stay on task about 85 to 90 percent of the workday. . . ." (*Id.* at 90-91). Significantly, the vocational expert noted that employers of unskilled workers "allow an unscheduled absence about one time a month, 12 times over the course of the year." (*Id.* at 91). In other words, had the ALJ accepted Dr. Shamsi's opinion that Plaintiff could be expected to have two absences per month, she would not meet the demands of the occupations listed by the vocational expert at the hearing. As such, remand of this matter for further administrative proceedings, wherein the ALJ can appropriately analyze and weigh Dr. Shamsi's opinion, is necessary.

### B. Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 U.S. Dist. LEXIS 165592, at

*32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 14) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: October 10, 2018
       Rochester, New York